# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MARCUS E. LANGFORD,
     Plaintiff,

    v.

MARIO SESSIONS, *et al*.,
     Defendants.

Civil Action No. 03-255 (CKK)

## MEMORANDUM OPINION
(July 29, 2005)

Plaintiff filed the instant suit after he discovered that his photographic likeness was being used without his permission on a flier promoting a gay nightclub, as well as on several web sites. Plaintiff sued a number of Defendants, including the company sponsoring the nightclub, Hourglass Corporation, and the company that designed the flier, Sessions Designs. Ultimately, the Court dismissed without prejudice Plaintiff's suit against all Defendants except Hourglass, because Plaintiff was unable to serve them. On June 18, 2003, the Clerk's Office of this Court found Defendant Hourglass to be in default, after which Plaintiff moved for a default judgment and Hourglass failed to respond. After the Court granted a default judgment against Defendant Hourglass, the Court held an ex parte hearing to determine proof of damages. Plaintiff subsequently filed a post-hearing brief addressing several issues raised at the hearing.

After consideration of the trial testimony, having observed the demeanor of the witnesses, the exhibits and the record in this case, as well as consideration of Plaintiff's brief and the relevant law, the Court makes the following findings. The Court finds that Plaintiff is entitled to damages resulting from the use of his photograph on the flyer, but is not entitled to damages resulting from the use of his photograph on personal web pages. Furthermore, Plaintiff's

damages are restricted to compensatory damages and not financial losses.  Plaintiff has not shown any business loss resulting from the unauthorized use of his photograph, nor has he shown a basis for awarding punitive damages.  Finally, the Court finds that injunctive relief against Hourglass and its agent, Sessions Designs, preventing them from any future use of Plaintiff's photograph without his prior written consent, is appropriate and shall be awarded.

## I.    FACTUAL FINDINGS

The Court has entered a default judgment against Hourglass Corporation because it failed to respond to Plaintiff's summons.  Consequently, Hourglass Corporation has been found liable for damages to Plaintiff caused by its use of Plaintiff's likeness without Plaintiff's permission.  After the entry of default, the Court held a hearing, to allow Plaintiff to present his proof of damages that he claims resulted from the improper use of his likeness.  Plaintiff's Complaint raises five claims:  invasion of privacy (Count I), invasion of privacy-false light (Count II), intentional infliction of emotional distress (Count III), negligence (Count IV), and defamation (Count V).  The Court's damages inquiry related specifically to the intentional infliction of emotional distress, harm to Plaintiff's professional reputation, defamation, Plaintiff's request for punitive damages and other appropriate relief.  *See* Tr. 3:15-3:21.[1]

The Court credits the following testimony.  Plaintiff is a computer aided design operator.  Tr. 4:23-5:3.  In addition, at the time of the hearing Plaintiff also was in the planning stages of launching a body building and fitness clothing line, although he had not yet obtained the investment capital required to launch this business.  Tr. 5:5-5:14.  Plaintiff has been involved in competitive body building, although he has not won a competition or received advertising

---

[1]Citations are to the unofficial version of the hearing transcript.

opportunities as a result of his participation.  Tr. 5:15-7:6.  Plaintiff has also worked with two

modeling agencies, and in the course of those relationships has had photographs taken for fitness

modeling.  Tr. 7:9-7:25; *see also* Pl.'s Hearing Ex. 2 (Plaintiff's Modeling Photographs).  There

is no evidence that Plaintiff received modeling work as a result of those photographs or his

relationship with the modeling agencies.

On May 12, 2002, Plaintiff received a note from a friend in the mail, which included a

flier advertising an event called "DL Sundays" at Hourglass Corporation's Club Abyss.[2]  Tr. 8:1-

8:25; *see also* Pl.'s Hearing Ex. 1 (DL Sundays Flier).  The flier included photographs of

Plaintiff that had been taken in the summer of 2000 by a photographer for a modeling agency

called Washington Models.  12:13-13:20.  The flier was produced by Sessions Designs, *see* Pl.'s

Hearing Ex. 1 (DL Sundays Flier); *see also* Tr. 14:2-14:5, and was displayed on Sessions

Designs' website under the heading "flyers," *see* TR. 14:6-15:11; *see also* Pl.'s Hearing Ex. 3

(Sessions Designs Web Pages).

Plaintiff first became aware that his likeness was shown on the Sessions Designs' website

on May 21, 2002, and the last time Plaintiff can prove that it was still on the website was on

November 4, 2002.  Tr. 15:20-16:7.  Plaintiff was never contacted by any of the Defendants[3] for

his permission to use his photographs for advertising purposes,[4] and he has not benefitted from

---

[2]Plaintiff supplied Hourglass Corporation's registration with the District of Columbia
Consumer and Regulatory Affairs, which demonstrates that Hourglass Corporation and Club
Abyss share the same address.  *See* Pl.'s Hearing Ex. 8 (Hourglass Corporate Record), Ex. 1 (DL
Sundays flier).

[3]As noted previously, all Defendants except Hourglass Corporation have been dismissed.

[4]In Plaintiff's post-hearing brief, he states that he asked Hourglass to stop using his
photograph.  *See* Pl.'s Brief at 13.  However, Plaintiff's Complaint does not make this factual

the use of his photograph by any Defendant.  Tr. 16:23-17:6.  Although there is no evidence that

Defendant Hourglass exercised any control over Sessions Designs' decision to post an example

of the DL Sundays flier on its website, Defendant Hourglass would benefit from the advertising

on the website prior to the event.

Plaintiff presented evidence indicating that DL Sundays was an event directed at the gay

community.  In addition to testifying that the term "DL" stands for "down low," suggesting

"secretive gay behavior," and that these meanings are "common knowledge," *see* Tr. 21:14-22:7,

Plaintiff supplied the Court with a printout of the DL Sundays website, which indicated that the

event was "[a]n event mainly for the gay community in the DC area," Tr. 19:19; *see also* Pl.'s

Hearing Ex. 4 (DLSundays.com Printout).

Separate from the DL Sundays flier and the Sessions Designs website, Plaintiff

discovered that one of the photographs used on the DL Sundays flier without his permission was

also used as part of a personal profile on the public website Gay.com, in a manner that suggested

that the photograph of Plaintiff was in fact a photograph of the profile's owner.  Pl.'s Hearing Ex.

5 (Gay.com Personal Profile).  Plaintiff did not give the owner of this personal profile, known

only by the screen name "McBlurry," permission to use his photograph.  Tr. 26:18-26:19.  A

friend of Plaintiff's found this personal profile on the internet, *see* Tr. 42:23-43:1.  Plaintiff

printed out the personal profile containing his photograph on January 22, 2004, and stated to the

Court that prior to discovering his photograph on the DL Sundays flier, he had never found his

---

claim, and Plaintiff did not testify that he requested that Defendant stop using his photograph.  In
fact, when asked if he had "ever had any contact with any of the defendants in this suit," Plaintiff
answered "[n]o."  Tr. 17:1-17:3.  Accordingly, the Court cannot find any evidence that Plaintiff
asked Hourglass to cease using his photograph, or that Hourglass persisted in using Plaintiff's
photograph even after being asked to stop doing so.

photograph being used in any gay personal profiles, but that after learning of the DL Sundays flier, he found his photograph in two gay personal profiles. Tr. 27:19-28:3. Plaintiff has not produced any evidence connecting the use of his photograph in the personal profile of an unknown person to the use of his photographs by Hourglass on the DL Sundays flier.

Plaintiff indicated at the hearing that he believed the use of his photographs on the flier and on the various websites suggests that he is a homosexual, which he is not. Tr. 22:8-22:12. When asked how he felt when he learned that his photographs appeared on the DL Sundays flier and the Sessions Designs website, Plaintiff responded: "It's just humiliating. . . . I've never claimed to hate . . . people in the gay community. I'm not like that. But I was raised to believe that their lifestyle is not tolerable. I'm a religious person." Tr. 42:2-42:5. Plaintiff further explained that "being seen as a homosexual is disturbing," and stated that "I know my friends already, they are suspicious." TR. 42:6-42:10. Plaintiff explained that after his photograph was used without his permission, he has had to spend more time "defending [his] sexuality . . . and that's uncomfortable." Tr. 43:9-43:12. In addition, Plaintiff stated that since he discovered his photograph on the DL Sundays flier in May 2002, he has been approached while at the gym by homosexual men, which did not happen before his photograph appeared on the flier. Tr. 43:15-44:3. Plaintiff's fiancee also testified that since the unauthorized use of his photograph, "[h]e's become more negative towards the gay community. I think before . . . he dealt with it from a distance. If they didn't approach him, then he didn't approach them . . . . But now that . . . he's been . . . forced to [be] expose[d] to it I think he's just more angry at the situation now." Tr. 51:15-51:20.

Plaintiff also explained that he has been mistaken for a homosexual in the context of an

internet website on which he does networking for his business, and that since the publication of

the DL Sundays flier he has received frequent "e-mails and notes from men that think I'm gay or

. . . want to go out or want to hang out, want to have relations and things like that." Tr. 44:4-

44:11.  Plaintiff stated that, although he would receive occasional contact from homosexual men

through his business networking website, the contacts were much more frequent after the

publication of the DL Sundays flier.  TR. 45:19-46:2.  Plaintiff's networking website included

photographs of him, although not the same photographs used on the flier.  Tr. 45:1-45:3.  When

asked specifically whether the fliers and the internet sites have affected his professional

reputation, Plaintiff responded:

> [E]veryone hasn't noticed, but within the fitness and body building industry, there
> [is] a prominent life of homosexuals, that's a given.  But I don't want anything that
> I'm involved in associated with that.  I don't want anyone . . . that has seen this flier,
> I don't want anyone to look at me or look at any of my associates in any company and
> associate me with that type of lifestyle because you know, it could either affect you
> negatively or positively . . . .  If I ever decided to pursue modeling, I have to wonder
> whether or not I would be singled out as a model that would be willing to do
> homosexual work, . . . gay work or pornography or something like that because those
> types of things eventually they can lead into that.

Tr. 46:23-47:12.  It was clear to the Court from Plaintiff's demeanor and the emotional tone of

his voice, that these incidents have had a marked effect on him.  Plaintiff has produced no

additional evidence suggesting any business loss he has incurred as a result of the use of his

photographs without his permission.

## II.    DISCUSSION

Plaintiff alleges that between February 2002, and November 2002, his photograph was

used without his permission on a flier to promote an event called "DL Sundays," held at

Hourglass Corporation's Club Abyss.  *See* Compl. Ex. 1 (DL Sundays flier).  This flier was also

posted on the Sessions Designs website, although Sessions Designs is no longer a Defendant in this case.  TR. 14:6-15:11; *see also* Pl.'s Hearing Ex. 3 (Sessions Designs Web Pages).  Finally, a photograph used in the flier also appeared on a personal home page on the website Gay.com.  Pl.'s Hearing Ex. 5 (Gay.com Personal Profile).

The Court considers the testimony and exhibits offered at the hearing for the purpose of ascertaining the damages to which Plaintiff is entitled.  "Under [Federal Rule of Civil Procedure] 55(b)(2),[5] a court may hold an evidentiary hearing to assist in computing damages in default cases."  *Al-Kazemi v. Gen. Acceptance & Inv. Corp.*, 633 F. Supp. 540, 542 (D.D.C. 1986).  Indeed, "a court must hold a hearing on damages before entering a judgment on an unliquidated claim even against a defendant who has been totally unresponsive."  *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980).  "Upon a party's default, the well-pleaded allegations of the complaint related to liability are taken as true.  Allegations related to damages, however, are not taken as true.  At the damages hearing, the party seeking a default must provide evidence supporting the damages claimed."  *Al-Kazemi*, 633 F. Supp. at 542 (citations omitted).

As a preliminary matter, Plaintiff has produced no evidence indicating that he has suffered any financial loss with respect to his business ventures as a result of the use of his photograph without permission.  Plaintiff's body building and fitness clothing line had not been financed or launched during the relevant time frame.  Tr. 5:5-5:14.  Plaintiff's participation in body building competitions had not led to any advertising opportunities that might have been

---

[5]Rule 55(b)(2) states in relevant part that "[i]f, in order to enable the court to enter [default] judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages . . . the court may conduct such hearings . . . as it deems necessary and proper . . . ."  Fed. R. Civ. P. 55(b)(2).

affected by the use of his photograph.  *See* Tr. 5:15-7:6.  Finally, although Plaintiff had modeling

photographs taken for fitness modeling, *see* Tr. 7:9-7:25, Plaintiff has submitted no evidence that

his relationships with modeling companies resulted in him working as a model.  Accordingly,

Plaintiff has produced no evidence on which the Court could find that he has suffered an

ascertainable financial loss attributable to the DL Sundays flier.

Similarly, the Court finds that Plaintiff has produced no evidence to suggest that his

photograph on the Gay.com personal profile was attributable to Defendant Hourglass, or indeed

any Defendant in this case.  There is nothing to suggest that the individual who posted Plaintiff's

photograph on Gay.com got Plaintiff's photograph from the DL Sundays flier produced by

Sessions Designs for Hourglass, rather than from some other source.  Indeed, the fact that no

evidence suggests how Sessions Designs came into possession of Plaintiff's photograph makes it

all the more speculative to assume that the owner of the personal profile got Plaintiff's

photograph from the DL Sundays flier.

The Court finds, however, that Defendant Hourglass has conceded liability as to its own

use of Plaintiff's photograph when it distributed fliers for its DL Sundays event.  Furthermore,

Plaintiff has specifically alleged an agency relationship between the several Defendants, *see*

Compl. ¶ 7, which the Court takes as true, *see Al-Kazemi*, 633 F. Supp. at 542.  Consequently,

Hourglass has conceded liability for damages resulting from the posting of its flier on the

Sessions Designs website, which was used to advertise Defendant Hourglass' gay club event.

The Court next considers what damages it may properly award to Plaintiff based on this

liability.  Hourglass has put Plaintiff in the position of being portrayed as something he is not.

Plaintiff has both personal relationships and a developing business enterprise, and is entitled to

portray himself in those contexts in a manner of his choosing.  Instead, however, Hourglass has

used Plaintiff's photograph in a manner that portrays Plaintiff as a homosexual.  Plaintiff has

made it clear that he is not a homosexual, and that this is not the light in which Plaintiff wishes to

be portrayed for purposes of either his personal or his professional life.  Hourglass' decision to

use Plaintiff's photograph without his permission, in a context that suggests Plaintiff is

homosexual, has caused Plaintiff considerable personal distress because the portrayal is

inaccurate.

The common law tort of invasion of privacy is in fact a collection of four distinct types of

invasions.  These are "(1) intrusion upon one's physical solitude or seclusion; (2) public

disclosure of private facts; (3) publicity that places one in a false light in the public eye; and (4)

appropriating one's name or likeness for another's benefit."  *Danai v. Canal Square Assocs.*, 862

A.2d 395, 399 n.3 (D.C. 2004) (citations omitted).

The District of Columbia has "adopted the definition of the tort of appropriation of name

or likeness set forth in Section 652C of the Restatement (Second) of Torts," which specifies that

"[o]ne who appropriates for his own use or benefit the name or likeness of another is subject to

liability to the other for invasion of his privacy."  *Tripp v. United States*, 257 F. Supp. 2d 37, 40-

41 (D.D.C. 2003) (citations omitted).  The District of Columbia Court of Appeals has held that

"a cause of action for the invasion of privacy represents a vindication of the right of private

personality and emotional security."  *Vassiliades v. Garfinckel's*, 492 A.2d 580, 589 (D.C. 1985)

(citations omitted).  "Publication of a photograph of a nonpublic person without his consent is a

violation of that right."  *Id.* (citing *Peay v. Curtis Publ'g Co.*, 78 F. Supp. 305, 309 (D.D.C.

1948).

Plaintiff's Count I, invasion of privacy, seeks damages for the use of Plaintiff's photograph without his permission for business promotional purposes.  Plaintiff is a private citizen, and the use of his photograph on the DL Sundays flier and the Sessions Designs website fits squarely within the fourth prong of the tort of invasion of privacy, because it is unquestionably an example of "appropriating one's name or likeness for another's benefit." Accordingly, Plaintiff is entitled to compensatory damages for the harm he has suffered as a result of this tort.

Plaintiff's Count II, invasion of privacy by the portrayal of Plaintiff in a false light, seeks damages under the third prong of the invasion of privacy tort, because the impermissible use of Plaintiff's photograph in a flier promoting a gay social event constitutes "publicity that places [Plaintiff] in a false light in the public eye."  Plaintiff has stated that he is not gay, but that the DL Sundays flier promotes a gay event and the use of his photograph suggests that he is a homosexual.  Again, Plaintiff is entitled to compensatory damages for this tort.

Plaintiff's Count III, intentional infliction of emotional distress, requires a showing of "extreme and outrageous conduct on the part of the defendant" which is either intentional or reckless, and which "causes the plaintiff severe emotional distress."  Plaintiff has stated to the Court that he has suffered emotional distress.  He has been forced to "defend[] [his] sexuality," a situation he has described as "uncomfortable."  Tr. 43:9-43:12.  He has been approached in various contexts by gay men in whom Plaintiff, as a heterosexual, is not interested in cultivating a relationship, and he has become both "more negative towards the gay community" and "angry at the situation."  Tr. 51:15-51:20.  However, "[t]o be actionable, conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."  *Kitt v.*

*Capital Concerts, Inc*, 742 A.2d 856, 861 (D.C. 1999) (citations omitted).  Furthermore, a

"plaintiff must suffer from emotional distress of so acute a nature that harmful physical

consequences might be not unlikely to result."  *Id*. at 862 (citations omitted).

Plaintiff has not demonstrated that he asked Defendant to stop using his photograph, *see*

*supra* n.4, and he has not otherwise demonstrated that Defendant's use of his photograph without

permission was "so outrageous in character" or "so extreme in degree" that Defendant can be

accused of having behaved in a manner that goes "beyond all possible bounds of decency."  In

addition, although Plaintiff was clearly wronged when his photograph was used on the DL

Sundays flier, he has not presented the Court with testimony suggesting that his suffering rises to

the level of being "so acute a nature that harmful physical consequences might be not unlikely to

result."  Plaintiff is rightfully upset, frustrated and angry, and Defendant's behavior is certainly to

be disfavored, but the record is devoid of facts suggesting that Plaintiff should be permitted to

recover damages for the intentional infliction of emotional distress.

Plaintiff's Count IV is a negligence claim for which Plaintiff seeks compensatory

damages.  "In the District of Columbia, there is liability for negligence only where there is a duty,

a breach of that duty, and injury proximately caused by that breach."  *Green v. United States*, 991

F. Supp. 15, 18 (D.D.C. 1998) (citing *Williams v. Baker*, 572 A.2d 1062, 1064 (D.C. 1990)).  "A

breach of duty may be said to occur from the violation of a common-law duty, such as the duty to

exercise ordinary or reasonable care . . . ."  *Id*.  The District of Columbia has "a uniform standard

of conduct, which is reasonable care under the circumstances."  *Id*. at 18 n.6 (citing *Morgan v.*

*District of Columbia*, 468 A.2d 1306 (D.C. 1983)); *see also Ray v. Am. Nat'l Red Cross*, 696

A.2d 399, 402 (D.C. 1997).  The Court finds that reasonable care under these circumstances

11

would clearly include obtaining permission from the subject of a photograph before using that photograph in a promotional flier.  Although Defendant Hourglass did not design the DL Sundays flier itself, it has conceded that it had an agency relationship with Sessions Designs, which did produce the flier.  *See* Compl. ¶ 7.  Consequently, Hourglass bears the same duty, which it has clearly breached to Plaintiff's detriment.  Accordingly, Plaintiff is entitled to damages on his negligence claim.

Plaintiff's Count V is a defamation claim.  In order to recover for defamation, Plaintiff must demonstrate:

> (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

*Klayman v. Segal*, 783 A.2d 607, 613 n.4 (D.C. 2001) (quoting *Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001).  The District of Columbia applies a negligence standard to a defamation action involving private individuals.  *Dresbach v. Doubleday*, 518 F. Supp. 1285, 1288 (D.D.C. 1981).

In order to determine whether Hourglass should be held liable to Plaintiff for defamation, the Court considers whether Hourglass' publication of Plaintiff's photograph on the DL Sundays flier constitutes a defamatory statement.  "[A]n allegedly defamatory remark must be more than unpleasant or offensive; the language must make the plaintiff[] appear odious, infamous, or ridiculous."  *Id*. (citations omitted).  Plaintiff has not presented, and the Court has not found, any legal precedent in this jurisdiction supporting the notion that the suggestion that an individual is homosexual, though false, should be considered defamatory.  The Court notes that "[P]laintiff

12

has the burden of proving the defamatory nature of [a challenged] publication . . . and the publication must be considered as a whole, in the sense in which it would be understood by the readers to whom it was addressed." *Klayman*, 783 A.2d at 613.  Although Plaintiff has stated (and Hourglass has conceded) that Plaintiff is not homosexual, the determination of whether the flier is defamatory (as opposed to merely false) is a legal determination for which Plaintiff bears the burden of persuasion.[6]  The fact remains, however, that Plaintiff has merely stated the legal standard for defamation, and presumed that he has met the requirements.  Such a presumption falls well short of meeting the burden of proving the defamatory nature of the flier.  In the absence of any legal argument, the Court cannot find that Plaintiff is entitled to damages on his defamation claim.

Finally, Plaintiff also requests that the Court assess punitive damages against Hourglass. Punitive damages "are aimed at deterrence and retribution." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003).  When considering an award of punitive damages, the Court considers "three guideposts:  (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the

---

[6]The Court notes that to suggest that an allegation of homosexuality is defamatory does not have an initial plausibility or appeal.  *See Albright v. Morton*, 321 F. Supp. 2d 130 (D. Mass. 2004).  In *Albright*, the court found that "the large majority of the courts that have found an accusation of homosexuality to be defamatory per se emphasized the fact that such a statement imputed criminal conduct," but that "[t]his rationale is extinguished by the Supreme Court's recent ruling in *Lawrence v. Texas*, 539 U.S. 558 (2003) . . . ."  *Albright*, 321 F. Supp. 2d at 137. Indeed, the Massachusetts court explained that "[c]ontinuing to characterize the identification of someone as a homosexual defamation *per se*" has the effect described by the Supreme Court as "demean[ing] the lives of homosexual persons."  *Id*.

13

jury and the civil penalties authorized or imposed in comparable cases."[7]  *Id*. at 418.  The

Supreme Court has held that the first of these factors, "the degree of reprehensibility" is the most

important.  *Id*. at 419.

The Supreme Court has suggested that courts assessing reprehensibility consider, *inter*

*alia*, whether the harm was "physical as opposed to economic," whether it "evinced an

indifference to or a reckless disregard of the health or safety of others," whether "the conduct

involved repeated actions or was an isolated incident," and whether "the harm was the result of

intentional malice, trickery, or deceit, or mere accident."  *Id*.  In considering the record for this

case, the Court finds than an award of punitive damages cannot be supported.  Hourglass has

conceded liability for harms to Plaintiff as a result of the impermissible use of his photograph,

and was clearly negligent in its failure to ensure that it had permission to use Plaintiff's

photograph.  However, nothing suggests that this failure is so extraordinary as to be considered

truly reprehensible.  Hourglass' use of Plaintiff's photograph did not cause Plaintiff any physical

harm; indeed, there is nothing to suggest it caused Plaintiff any economic harm either.

Hourglass' actions did not endanger others' health or safety, and there is nothing in the record to

indicate whether or not Defendant's actions were repeated.  Finally, as noted *supra* in footnote 4,

the Court cannot find that Defendant was asked to stop using Plaintiff's photograph, but persisted

undeterred.  As a result, Plaintiff has not demonstrated that Defendant acted with any malice,

trickery, or deceit.  In light of this, the Court finds that punitive damages would not be

---

[7]The Court notes that the Supreme Court developed these "guideposts" in the context of a court reviewing a jury award of punitive damages.  In the instant case, no jury award exists because Defendant defaulted before this case could ever proceed to trial.  However, the Court endeavors to consider the facts of this case in light of these "guideposts," most crucially the "degree of reprehensibility."

appropriate in this case.

In determining the appropriate amount to award Plaintiff as compensatory damages, the Court has considered the nature of the claims, and the effect Defendant's actions had on Plaintiff. The Court has also considered that Plaintiff, as a private person, has a specific image of himself which identifies him, and this image is the one he wants to portray to the community at large. Defendant's actions have resulted in the misappropriation of Plaintiff's image and the misrepresentation of Plaintiff's image to the community, including portraying this false image on the widely-accessible internet.  Plaintiff views this, not unreasonably from the Court's perspective, as a form of identity theft.

## III.    CONCLUSION

After careful consideration of Plaintiff's five claims, as well as Plaintiff's request for punitive damages, the Court finds that Plaintiff is entitled to compensatory damages for his two invasion of privacy claims, as well as his negligence claim, but is not entitled to recover on his theories of intentional infliction of emotional distress and defamation, and is not entitled to punitive damages.

Accordingly, and in light of the harms Plaintiff has suffered, the Court shall award Plaintiff $70,000.  Plaintiff is entitled to enforce this default judgment against Defendant Hourglass.  The Court shall also enjoin Defendant Hourglass, and Sessions Designs as an agent of Hourglass, from using Plaintiff's image in any form and from disseminating Plaintiff's image in any way to other persons or entities without Plaintiff's prior written consent.

_____/s/_____

COLLEEN KOLLAR-KOTELLY
United States District Judge
